**LANDMARK COMMERCIAL REALTY, INC., Plaintiff–Appellee,**

v.

**DEVELOPERS DIVERSIFIED, LTD., and W & M Properties, Defendants–Appellants.**

No. 97–3602.

United States Court of Appeals, Sixth Circuit.

Argued July 30, 1998.

Decided Dec. 18, 1998.

Rehearing Denied Feb. 10, 1999.

Marvin L. Karp (argued and briefed), Ulmer & Berne, LLP, Cleveland, OH, for Plaintiff–Appellee.

Paul P. Psota (briefed), Chattman, Gaines & Stern, Cleveland, OH, Alan G. Starkoff (argued and briefed), Chattman, Gaines & Stern, Independence, OH, for Defendant–Appellant.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

NELSON, J., delivered the opinion of the court, in which CLAY, J., joined. BOGGS, J. (pp. 11–12), delivered a separate dissenting opinion.

## OPINION

DAVID A. NELSON, Circuit Judge.

Under Ohio Rev.Code § 4735.21, a person who performs real estate brokerage services is denied a right of action to collect compensation therefor unless the person has been licensed either as a real estate broker or, in certain situations, as a foreign real estate dealer.

The case at bar is a diversity action brought by a Florida real estate broker to collect compensation for brokerage services performed in connection with an Ohio real estate transaction. The dispositive question on appeal is whether the plaintiff—a company that was not licensed by the State of Ohio during the relevant time period—had a right

of action for collection of its commission under a promissory estoppel theory. We conclude, as a matter of Ohio law, that the plaintiff had no such right of action.

## I

Landmark Commercial Realty, Inc., the plaintiff herein, is a Florida corporation organized and owned by a Floridian named Robert Kurlander. Both Landmark and Mr. Kurlander have long been licensed by Florida as real estate brokers.

The defendants—Ohio partnerships known as Developers Diversified, Ltd., and W & M Properties—are controlled by Clevelanders Bart Wolstein and John McGill. Through Developers, W & M, and their subsidiary companies and partnerships, Messrs. Wolstein and McGill are engaged in the development of shopping centers and other commercial properties in some 30 states, including Ohio and Florida.

Wolstein and McGill began using Landmark's services as early as 1982, and the business relationship continued, off and on, for the next decade. Under an agreement signed in 1984, Developers designated Landmark as its exclusive licensed real estate broker for, shopping center site locations in various Florida markets. Landmark thereafter provided brokerage services to Developers in connection with a number of Florida land transactions involving Wal–Mart Stores, Inc. From time to time Landmark was also asked to assist Developers in Virginia, Ohio, and elsewhere.

In May of 1990 Wal–Mart asked Developers to recommend potential sites for Wal–Mart stores in the Northeastern Ohio area. Developers engaged Landmark to perform this site selection work, allegedly promising compensation in an amount to be determined under the 1984 contract.

Mr. Kurlander worked on the Northeastern Ohio project for the better part of six months, and he appears to have been instrumental in persuading Wal–Mart to buy—for more than $2.4 million—16 acres of land owned by W & M and offered for sale by Developers in Macedonia, Ohio. Wal–Mart signed a contract to buy the land in April of 1992. With Wal–Mart as an anchor, the Wolstein–McGill interests were able to build a shopping center on the adjoining 70 acres. The defendants refused, however, to pay Landmark the commission that Mr. Kurlander understood had been promised.

## II

Landmark filed a two-count complaint in federal district court in February of 1993. One count of the complaint alleged that Landmark was entitled to a commission, calculated under the 1984 agreement, of $105,-654.62. The other count alleged that Landmark was entitled to the same amount as the reasonable value of the brokerage services it had performed.

The defendants took Mr. Kurlander's deposition in November of 1993, at which time Kurlander testified that he had never been licensed as a real estate broker in the State of Ohio. Soon thereafter the defendants moved for summary judgment on the ground that Landmark had conceded it was not a licensed Ohio real estate broker. Five days later Landmark and Mr. Kurlander received Ohio licenses as foreign real estate dealers.[1]

Citing *In re Ferncrest Court Partners, Ltd.*, 66 F.3d 778 (6th Cir.1995), the district court denied the defendants' summary judgment motion. (In *Ferncrest*, as we shall see presently, our court held that Ohio Rev.Code § 4735.20, which prohibits the splitting of real estate commissions with unlicensed persons, did not preclude a licensed Ohio broker from splitting a commission with a broker licensed only in another state.) A motion for reconsideration was also denied on the strength of *Ferncrest*.

The case ultimately went to trial before a jury of eight. At the conclusion of Landmark's case in chief the defendants moved for judgment as a matter of law. This mo-

---

1. Under Ohio Rev.Code § 4735.01(G), as explained in the next part of this opinion, "foreign real estate" means real estate situated outside of Ohio. "Foreign real estate dealer" is defined in terms of an entity that provides brokerage services "with respect to foreign real estate." Ohio Rev.Code § 4735.01(H).

tion was denied, as was a renewed motion for judgment at the conclusion of all the evidence.

The trial court instructed the jury that the plaintiff was not entitled to recover a real estate brokerage commission as such. Pursuant to Fed.R.Civ.P. § 15(b), however, the complaint was amended to assert a promissory estoppel claim. The case was then submitted to the jury under two theories: promissory estoppel with respect to Developers and *quantum meruit* with respect to W & M.

The jury found for plaintiff Landmark in the amount of $105,654 on the promissory estoppel claim, and it found for Landmark in the amount of $35,000 on the *quantum meruit* claim. Because Landmark was entitled to only one recovery, judgment was entered against Developers alone in the amount of $105,654. This judgment was subsequently amended to include prejudgment interest in the additional amount of $45,227. A motion for judgment *n.o.v.* was denied, and a timely notice of appeal followed.[2]

### III

#### A

■ The first sentence of Ohio Rev.Code § 4735.21 reads as follows:

"No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer."

It is uncontested that the brokerage services that were performed by Landmark, and for which Landmark sought compensation, constituted "acts mentioned in section 4735.01...." See Ohio Rev.Code § 4735.01(A).

Section 4735.21 and its precursors have been strictly enforced against persons who, although not licensed by Ohio, have sought to recover brokerage commissions through litigation in Ohio. See *Stanson, Inc. v. McDonald,* 147 Ohio St. 191, 70 N.E.2d 359 (1946); *Sadowsky v. Ina,* 31 Ohio App.3d 246, 510 N.E.2d 837 (1986); *Rispo Realty Co. v. Wisniewski,* 186 N.E.2d 758 (Ohio App. 1962); *Maglione v. Wojno,* 63 Ohio App. 223, 25 N.E.2d 946 (1939); *Kramer v. Roth,* 42 Ohio App. 1, 181 N.E. 277 (1932). Further, the Ohio courts have consistently held that an unlicensed broker cannot avoid the statute's reach by asserting equitable causes of action sounding in promissory estoppel, *quantum meruit,* or the like. See *Stanson,* 147 Ohio St. at 197, 70 N.E.2d at 362 (decided under precursor statute similar to § 4735.21); *Leatherbury v. Reagan,* 34 Ohio App.3d 291, 518 N.E.2d 58, 60 (1987).

■ Plaintiff Landmark argues that, as the holder of a Florida real estate broker's license, it was licensed as a "foreign real estate dealer" within the meaning of Ohio Rev.Code § 4735.21 and was thus entitled to have its claims submitted to the jury. In this connection Landmark cites *In re Ferncrest Court Partners, Ltd.,* 66 F.3d 778, 781 (6th Cir.1995), where a Missouri-licensed broker was allowed to share in a commission paid to a real estate broker licensed by Ohio.

It is true, as the defendants point out, that § 4735.21 was not at issue in the *Ferncrest* case. *Ferncrest* involved the preceding section, § 4735.20, which controls the splitting of commissions. But what this court said in *Ferncrest* was that "[s]ection 4735.20 clearly provides that it prohibits only the payment of a commission to any broker not holding a license of any state. As long as the broker holds a license of some state, the broker may accept the payment of a commission" from an Ohio-licensed broker. *Ferncrest,* 66 F.3d at 781. If sections 4735.20 and 4735.21 are read *in pari materia,* as they should be, this language from *Ferncrest* might seem to support Landmark's contention that the term "foreign real estate dealer," as used in Section 4735.21, can include a broker licensed by Florida.

The operative language of the section interpreted in *Ferncrest,* however, is signifi-

---

**2.** Although Developers was joined by W & M in the appeal, no judgment has been entered against W & M. The latter partnership's lack of standing to appeal makes no practical difference here.

cantly different from that of the section in question here. Section 4735.20, the first sentence of which is quoted in the margin,[3] allows Ohio licensees to split real estate commissions not only with "foreign real estate dealer[s]" (*i.e.*, as we shall see, foreign dealers licensed as such by Ohio), but also with "licensed foreign real estate dealer[s] *of another state.*" (Emphasis supplied.). Yet in the section that governs the case at bar, § 4735.21, the legislature referred simply to persons or entities "licensed as a . . . foreign real estate dealer," omitting the key words "of another state." The logical inference, we believe, is that a person licensed only by another state is not "licensed as a . . . foreign real estate dealer" within the meaning of § 4735.21.[4]

Under Ohio Rev.Code § 4735.27, an applicant who passes a written examination, designates an agent for service of process in Ohio, and meets other statutory requirements may be licensed by Ohio to act as a foreign real estate dealer. In referring to licensure as a "foreign real estate dealer," we are satisfied, § 4735.21 is referring to licensure by the State of Ohio under § 4735.27. And *Ferncrest* does not compel us to conclude that licensure as a real estate broker in Florida is all that Landmark needs to show in order to meet the condition prescribed by § 4735.21 for enforcing an Ohio right of action to collect compensation for the performance of brokerage services relating to Ohio real estate.

### B

■ Landmark goes on to argue that its receipt of an Ohio license as a foreign real

estate dealer late in 1993 allows it to recover compensation for brokerage services performed earlier in relation to real estate situated in Ohio. There are two reasons why we find this argument unpersuasive.

In the first place, the Ohio Revised Code defines "foreign real estate dealer" as follows:

"'Foreign real estate dealer' includes any person, partnership, association, or corporation, foreign or domestic, who for another . . . upon the promise of receiving or collecting a fee, commission, or other valuable consideration, does or deals in any act or transaction specified or comprehended in division (A) of this section [defining the work of a 'real estate broker'] *with respect to foreign real estate.*" Ohio Rev.Code § 4735.01(H) (emphasis supplied).

This section makes it crystal clear that a foreign real estate dealer is one who engages in transactions relating to "foreign real estate." That term is also defined: "'Foreign real estate' means real estate *not situated in this state* and any interest in real estate *not situated in this state.*" Ohio Rev.Code § 4735.01(G) (emphases supplied). "Real estate," by contrast, includes "every interest or estate in land *situated in this state.*" Ohio Rev.Code § 4735.01(B) (emphasis supplied). The 16 acres of land in question here was Ohio real estate, not foreign real estate.

The defendants cite *Pearce, Mayer & Greer v. Williams,* 147 N.E.2d 866 (Ohio Com.Pl.1957), in which the court stated that "[t]he conclusion is inescapable that no li-

---

**3.** Ohio Rev.Code § 4735.20(A) provides, in its first sentence, as follows:

"No licensed real estate broker or licensed foreign real estate dealer shall pay a commission for performing any of the acts specified in section 4735.01 of the Revised Code to any person who is not a licensed real estate broker or a *licensed real estate salesperson or to any* person who is not a licensed foreign real estate dealer or a licensed foreign real estate salesperson, provided that a licensed real estate broker or licensed foreign real estate dealer may pay a commission to a licensed real estate broker or licensed foreign real estate dealer of another state and may receive a commission

from a licensed real estate broker or licensed foreign real estate dealer of another state."

The language is cumbersome, but the prohibition in the first part of the sentence—a prohibition against Ohio licensees splitting commissions with anyone not licensed by Ohio—is modified by the proviso, as we parse the sentence, so as to permit Ohio licensees to pay commissions to licensees of another state.

**4.** In the case at bar, moreover, the record merely shows that Landmark and Mr. Kurlander are licensed real estate brokers "in the State of Florida." The record contains no indication that Florida ever licensed them as "foreign" real estate dealers.

censed broker of any other state may maintain an action against an Ohio real estate owner." *Id.* at 870. Landmark correctly points out that *Pearce* was decided before the provision relating to foreign real estate dealers was added to Section 4735.21. But because the work of a foreign real estate dealer, by definition, relates to foreign real estate, the change in the statute avails Landmark nothing.

The second reason why we find Landmark's argument unpersuasive is this: Landmark's license was obtained too late to be of any help to it in this case. Ohio law provides that "[n]o person, partnership, association, or corporation shall act as a real estate broker ... without *first* being licensed as provided in this chapter." Ohio Rev.Code § 4735.02 (emphasis supplied). This section made it unlawful for Landmark to provide brokerage services without "first being licensed," and that fact too is dispositive of Landmark's argument.[5]

We see no reason to reach any of the defendants' remaining assignments of error. For the reasons already stated the judgment of the district court is **REVERSED** and the case is **REMANDED** with instructions that judgment be entered in favor of Developers as well as W & M.

BOGGS, Circuit Judge, dissenting.

A jury in this case found that plaintiff Landmark was entitled to more than $100,000, plus interest, for real estate work that it had done pursuant to an agreement with the defendants. The only question in this case is whether an Ohio statute should be interpreted to deprive plaintiff of recompense for its agreed-upon labors. While I agree with the majority that we must enforce such an inequitable result if it is compelled by the Ohio statute, I do not find the relevant language as compelling as they do.

Ohio Rev.Code § 4735.21 clearly bars a person's right of action or compensation for real estate work unless such person "was licensed as a real estate broker or foreign real estate dealer." This prohibition would be perfectly clear and binding if the statute contained any specific language defining those terms, or otherwise stating clearly that they should be interpreted, to exclude a person licensed by another state. No portion of the Ohio Rev.Code, including especially § 4735.27, specifically denies the possibility of a person who is licensed to deal in real estate in another state being considered a "foreign real estate dealer." Indeed, the very language of § 4735.01(H) defines a "foreign real estate dealer" as a person who for a fee performs certain acts "with respect to foreign real estate." Landmark certainly did such things. It simply did not do them with respect to *this* deal, which concerned real estate in Ohio. I would require the statute to be clearer than it is, in order to sanction the unjust result of defendants acquiring the valuable fruits of plaintiff's labors for nothing.

While not controlling, the case of *In re: Ferncrest Court Partners, Limited,* 66 F.3d 778 (6th Cir.1995), indicates that we have held, in somewhat similar circumstances, that Ohio law should not be interpreted with dogmatic strictness to permit similarly unjust results. In that case, the key language permitted the payment of a commission to a "licensed foreign real estate dealer of another state," which was held to include persons not licensed in Ohio. *Id.* at 781-82. By the very nature of that holding, however, we

---

**5.** It is true, as the dissenting opinion notes, that § 4735.02 does not forbid anyone to act as a "foreign real estate dealer" without first being licensed as such under Chapter 4735. If Landmark were attempting to collect compensation for the performance of brokerage services rendered with respect to real estate not situated in Ohio, therefore, Landmark's after-the-fact licensure as a foreign real estate dealer might (depending on what one's definition of "was" is) enable Landmark to allege and prove that it "was licensed as a ... foreign real estate dealer" within the contemplation of § 4735.21.

Again, however, Landmark is not attempting to collect compensation for services rendered with respect to *foreign* real estate. Instead, without "first being licensed as provided in [Chapter 4735]," Landmark acted as a broker with reference to *Ohio* real estate—and the company is now trying to collect compensation for these *Ohio* real estate brokerage services. If §§ 4735.02 and 4735.21 have any intelligible meaning at all, it seems to us, they bar accrual of the right of action Landmark is seeking to assert in this case.

recognized that a person licensed to practice real estate in a state other than Ohio could indeed be considered to be a species of "licensed foreign real estate dealer." While the statute considered in *Ferncrest* made this result even clearer by including the language "of another state," the omission of that phrase in this statute does not negate the interpretation implicit in *Ferncrest*, that there are two types of "licensed foreign real estate dealers": those who are licensed by Ohio and those who are licensed by another state. When the term is used without any qualifier, it may refer to either. If the term were meant to apply *only* to those so licensed by Ohio, the legislature could have said so, or added reference language such as "licensed foreign real estate dealer, in accordance with § 4735.27."

Finally, the most mandatory portion of the Ohio Real Estate Code, § 4735.02, specifically forbids certain persons from acting "without first being licensed as provided in this chapter." Significantly, this first paragraph of the referenced section does *not* include "foreign real estate dealers." However, the very next paragraph indicates that the legislature knew about " foreign real estate dealers," as it forbids the employment of any such person whose license has been terminated, without any specific reference to such person being "licensed as provided in this chapter."

Thus, both by direct interpretation and by analogy to the reasoning in *Ferncrest*, I believe that plaintiff Landmark is not barred by the Ohio statute from receiving the fruits of its labors.

I therefore respectfully dissent.